The opinion of the Court was delivered by
Wardlaw, J.
The plat made by Buckhalter in February, 1831, which is annexed to the deed from William S. German to the plaintiff, and professes to delineate the parcel of the land granted to William Minor, which that deed conveys, would as color of title, have extended the plaintiff’s title to the lines delineated, if it had been attended by continuous and exclusive adverse possession within some part covered by the opposing claim. Without such possession, it would furnish strong evidence on the question of location, if it was unopposed by a contradictory title or possession. But on the trial of this case there was evidence, which the grounds of appeal did not require *146 to be reported, shewing that in the disputed territory, (lying between the eastern line of the Minor grant as shewn by plat distance, and its eastern line as indicated by the Surveyors appointed in this case,) grants had been made to David Dykes in 1805 of seven hundred and eighty-nine acres surveyed in 1804, and to Wiley Owens in 1819 of one thousand acres surveyed in 1818, which two grants in part overlap : — that the defendant’s lessor, Joshua Corley, had been in possession under both of these grants since 1836, and had a title derived from some of the heirs of Dykes older than the Buckhalter survey, and a title under Owens as old as 1836. Under these circumstances, it is impossible that the Buckhalter plat, or the plaintiff’s possession under it of a part outside of the defendant’s claim, should have any effect upon the defendant’s possession, or upon the question of boundary so far as the defendant is concerned. The case must be resolved into the question, How is the Minor grant to be located, supposing the plaintiff to have title to all that is properly covered by that grant.
This question has been several times before this Court in cases between this plaintiff and other defendants. It came here first on appeal by the defendant from the verdict and instructions in favor of the plaintiff, in the case of Evans vs. Weeks, which was twice argued and is reported in 6 Rich. 83. There in opposition to the decided opinion of Judge Evans, who presided at the first trial on circuit, and of Judge O’Neall, a majority of the Court held that the Southern line, running east from the Black Jack, should stop at the distance called for by the plat, as there was nothing certain to control the exact description by distance. The dissenting members of the Court relied on the “ road to pine log, Edisto,” represented by the plat, and on the Edisto river represented as a boundary. The road they took to be the White Ponds road, and considering it in the nature of a station, they thought that distance beyond it to the east should be given as required by the plat. And the river, which was covered by Johnson’s land that ran from a point up *147 Shaw’s Creek, to a point on the river a mile or so below “ Pine. Log,” they thought should be reached,' and to reach it they thought the north-eastern corner of the Minor line should be at least as far toward the east as the point where the eastern-extremity of the Johnson land strikes the river. But the majority of the Court,seeing that the land had never been in fact surveyed before the plat was made, thought that there was a difference between a road conjecturally laid down, and a station tree actually marked: — and that the river as a boundary could not be reached where it was called for, because Johnson’s land intervened.
That ease was sent back for a new trial, and tried before Judge O’Neall. On the second trial, evidence was adduced which the Judge and jury considered sufficient to shew .that the White Ponds road was the road'represented by the plat. The verdict for the plaintiff was upon appeal permitted to stand, not because the members of the Court who signed the former opinion 6 Rich., considered the road important, but because the jury upon a question of fact, to. which evidence had been offered on both sides, had found a verdict under instructions to which no just exceptions could be urged.
Another case of Evans vs. Corley, 8 Rich. 365, turned entirely upon the construction of German’s deed, the defendant having shewn neither title nor possession.
In the case now before us after another trial about the location of the Minor grant, under instructions to which no objection has been urged besides the one about the Buckhalter plat which we have disposed of, a verdict has been found for the defendant. The same reasons which influenced a majority of the Court in refusing a new trial upon the last appeal in Evans vs. Weeks would incline them now to refuse the motion here, if nothing new appeared. But upon the trial of this case on circuit much new evidence was heard concerning the roads, and the question of fact, upon which both parties staked thejcase, was whether the road called for in Minor’s plat as the “ road *148 to Pine Log, Edisto,” was not the Tory trail; and upon that question, judge and jury have decided .in favor of the defendant. The evidence shews that prior to 1792 there was no bridge over the Edisto at or near Pine Log, (the first Charter for a bridge was in 1791, (9 Stat 333;) but that there, persons walked a log over the river and swam their horses; that before 1790 various paths on both sides of the river led to the Pine Log, of which one on the south side may in some way have gone to the White Ponds; but that none of them was so-old or so notorious as a path called the Tory trail, which was much used in the Revolutionary war, and which led from the Pine Log to the Upper Three Runs : that the Act for opening the White Ponds road, after the building of the bridge,, was passed in 1792, (9 Stat. 349,) and the White Ponds road as it is now seen was cut out soon after-wards : that a few years subsequently, the Cooper road, from its intersection with the White Ponds road, near to Pine Log, to Cooper’s mill on the Three Runs, was opened, and running in the same general direction as the Tory trail, frequently crossed it, after which the Tory trail was discontinued; and that traces of the Tory trail are yet to be seen, and cross the southern line of the Minor grant about the proper distance from the Black Jack, according to the representation of the road on the Minor plat. This evidence of itself would raise a strong belief that the Tory trail was meant by Minor, and not the White Ponds road; but confidence is increased by an inspection of the plat of the adjoining Lend on the south, granted to the same William Minor, and surveyed by him in May, 1791. That plat as the surveyors testified was located, and on it is seen plainly delineated “ Road to Pine Log,” crossing the dividing line between the two tracts at the proper distance from the Black Jack which the plat in.this case requires, and traversing the southern tract towards the south-west, until it passes out near to where the Three Runs pass out. It is clear that the road represented was a road to the Three Runs, and not one to the White Ponds, and the putting of the two plats together leaves no doubt that *149 the same road is represented in both. Under the rule then that would regard the road as a station, and take plat distance from that, the location approved by a majority of the Court in 6 Rich, is shewn to be true, if we take distance from the Tory trail which is established by the evidence and verdict in this case.
But a majority of the Court thought before, and still think, that too much importance has been given to the delineation of the road where it crosses the Southern Line, while the delineation of its crossing on the Northern Line, and its relation to the point where the Edisto is to be reached, have been wholly neglected.
The grant -in this case is to William Minor, August, 1793 ; the plat made by William Minor, Deputy Surveyor, (probably, but not certainly, the same person as the grantee,) is dated May 27, 1790, when, as it professes, the survey was made. In the certificate subjoined to the plat, the boundaries are Taylor’s land, Minor’s land, Johnson’s land, Edisto river, Shaw’s creek, and vacant lands; but, in the mention of them, manifest mistakes were made in the points of the compass, S. E., having been put for S. W., East for South, and West for North.- These mistakes might have been innocently made; but a close'examination shows that the whole plat is a cheat and a fraud. Lands had been actually surveyed for William Minor and some other persons on the Three runs, for Taylor between the Three runs and Shaw’s creek, and for Johnson on- the Edisto — the distances between Taylor and Johnson on one side, and Minor on the other being each between three and four miles. Some lines of Taylor’s land West of a certain Black Jack were known, and also onS line running from the Black Jack North twenty degrees, West one hundred and sixty-nine chains. The evidence afforded by a comparison of the plat in this case with subsequent developments, is almost conclusive to show, that with a knowledge of the above particulars, and a general knowledge of the country, Minor, without probably, stretching a chain, *150 made for himself plats of an immense territory, East of Taylor’s and between his own tract on the Three runs and Johnson’s, and afterwards obtained grants on these fictitious surveys. One tract he represented South and East of the Black Jack, by lines taken partly from former surveys, which is said in the plat to contain fifteen thousand five hundred and fifty-six acres; the tract now in question he represented to lie North and East of the Black Jack, and to contain eleven thousand seven hundred and thirty acres. He divided the two by a line running due East from the Black Jack. On the Southern tract he made the distance of that line two hundred and forty chains, on the Northern, he extended it to two .hundred and eighty-seven chains, calling in the plat of the Northern tract, now in question, for his Southern tract and vacant land as boundaries. On both plats, the “ road to Pine Log Edisto” is represented as crossing the dividing line about the middle of the two hundred and forty chains. The Northern line of this Northern tract (which his certificate calls the Western) is laid down almost sti’aight, although it is made up of Shaw’s creek, Edisto river from the confluence of creek and river to Johnson’s land, and then of Johnson’s line to the terminus of this Northern line at a stake. Across this line of Johnson’s, laid down as part of the Northern line of this Minor tract, the road to Pine Log is represented to run, and Johnson’s Western extremity is represented to be on the river above Pine Log, and below the confluence. The whole length of the Northern line is represented as three hundred and forty-seven chains; the whole length of the Eastern line,, running due North from the end of the Southern to Johnson’s land, is represented as three hundred and thirty-eight chains. The Western line is made up of Taylor’s line, slightly deflecting from the cardinal points, one hundred and sixty-nine chains, and a line running due North, from the Northern end of Taylor’s line to Shaw’s creek, one hundred and eighty-five chains. The entire tract is represented as . -almost a square.
*151 An exact rectangle of three hundred and forty-seven chains long and three hundred and thirty-eight wide, would contain eleven thousand seven hundred and twenty-eight and six-tenths acres, which no doubt, after calculation-, was rounded into eleven thousand seven hundred and thirty. But creeks and rivers, and oblique lines, do not make rectangles, and a general knowledge of a country is insufficient for correct delineation or exact measurement. It is not therefore strange that Minor’s representation is found to be erroneous, and scarcely capable, with all the helps which it can derive from rules of location, of being applied with certainty to any parcel actually found to exist. The line due North, from the Northern end of Taylor’.s line to Shaw’s creek, instead of being one hundred and eighty-five chains, is only, when actually run, about sixty chains : and a line due North from any point of the Southern line, or of the Southern line - extended, to Johnson’s land, instead of being three hundred and thirty-eight chains, is only one hundred and forty-four chains, according to the location of the surveyors, and only two hundred and six chains, running into an angle of Johnson’s land, according to the location approved by this Court. Hence the great falling off of quantity; but it does not follow that the deficiency at the North must be supplied by encroachments in the East.
The argument for the plaintiff is made up of reference to arbitrary rules of location improperly deduced from decided cases by. generalizing special instances; and of a misapplication, as invariable axioms, of the methods which, in subordination to principle and subject to many exceptions; have been often used to attain truth. It is said, Johnson’s land is called for as a boundary and must be reached ; Edisto river is called for, and to Edisto you must get. As Johnson’s land, instead of running to the river between the confluence and Pine Log, embraces the confluence, and extends far below Pine Log, to reach the river without invading that land, you must run to the Eastern extremity of that land, and where it corners on the *152 river, make the North-east corner of the Minor grant, so that the boundaries of Johnson’s land, and of the river, may be satisfied.
But the ultimate purpose in all these questions of location is to ascertain what is the thing described. Where the description is in a grant from the State, decided cases forbid that the fictions, frauds and palpable errors of the grantee, or his surveyor, should make the grant void, although it is in fact the act of the grantee, and not of the State. The interests of innocent purchasers, often of honest owners, whose rights are trespassed upon by irresponsible squatters, have inclined the Courts to favor the grantees in construction of old grants; and perhaps it may be admitted that doubts, in an equal balance, should be decided in favor of a grant, and that in conflicts of boundary between two grants, the older should have the advantage in construction. ' But after these large admissions of what cases might show, it is certain that, in locating a grant, the aim should be to fix with certainty the parcel granted; that the terms of description used in the body of the grant, in the certificate. subjoined to the plat which is annexed to the grant, and in the plat itself, to which the grant refers, and which should be more certain and exact than any other description can be, should all be weighed, and from the whole, applied to the subject by inspection or testimony, the exact limits of the parcel be established. Where, in the whole description, many terms are introduced, they should all be reconciled if» possible 5 but where they are inconsistent, a certainty should not be destroyed by a false demonstration, much less by a vague or impossible requisition, and of two certainties, that which is more obvious and durable should be preferred. In the application of these principles to the solution of the puzzles which false or unskilful surveying, and careless or mistaken descriptions, often produce in the location of old grants, it has been found that accuracy in the use of instruments is less to be expected than a truthful report of what has been seen, and *153 that, therefore, where a line is described as running from an ascertained point, on a certain course, for a certain distance, to a monument, river, tree, or other fixed point, which is well described, the terminus described should be regarded rather than the result .which may be attained by using instruments in the manner specified. But when the terminus cannot be ascertained, the instrumental result must prevail. In like manner, a boundary contained in a description may become the terminus of a line, or may deflect a line, or break it into several lines, just consideration being bestowed upon the mode in which the boundary is introduced into the description, and upon the consistency or repugnancy of the various terms.
In this case, the Edisto river is called for as a boundary, but the plat shows that it is required as a boundary at the confluence of Shaw’s creek with it, and above the Pine Log. To the call for the river, definiteness is given by specification of a particular portion of it. Why then should the river be sought below Pine Log, and a portion of it be taken different from that which is specified ? It is called for, by the more exact description of the plat, above Johnson’s land; why should we labor to reach it below ? Johnson’s land is called for, and, from a stake, its line is represented as running due West,to the river. Why should the course be reversed, and a line be pursued due East from the point where the land is reached ? The whole difficulty arises from the inaccuracy of Minor’s conjectures about 'the lines of the Johnson tract, and the course of the river. He supposed Johnson’s line was straight; it is zig-zag. He supposed it ran to the river between Pine Log and the confluence ; it-embraces the confluence and extends up the creek. If we would draw a line from some point on the Johnson line, Northwest of where the Eastern Minor line, before approved by the Court, strikes that land, to some point on the river between Pine Log and the confluence,-and consider that line to be-Johnson’s, all difficulty would vanish, and every boundary called for by grant or plat would be satisfied.
*154 It is strange that the gross inaccuracy of a surveyor should be considered so much more beneficial to himself or his employer, than could be the honest exertion of his skill. So it must be, if an incorrect delineation shall be held to embrace all that its conflicting terms, taken separately, may require, and when, after satisfying one of the terms, and thus excluding the application of the other, according to the representation which shews its meaning, we should go on to satisfy that other too, by giving not what it asks, but the nearest approach that we can make to its requisition. The river, where it is asked for, cannot be got, for Johnson’s land covers that — therefore, the river in another place must be given. The two boundaries conflict; give one, and something as much as possible like the other. If we should go a mile below Pine Log to reach the end of Johnson’s land, and to find the river uncovered by it, then we should go almost indefinitely East and North for that purpose, if the river turned its course, and Johnson’s land was surveyed in the same supposititious and grasping manner as Minor’s was.
It is the decided opinion of the majority of this Court, that a correct location of the Minor grant does not include the places where the defendant has done the acts complained of as trespasses. There is nothing which authorizes us to extend the Southern line from the Black Jack further toward the East than the distance called for. A certainty obtained can yield only to a certainty more reliable. Even if the point on the river at the. Eastern extremity of the Johnson land is a true corner of the Minor grant, a straight line thence to the termination of the plat distance on the Southern line would not include the places of the supposed trespasses; and a straight line from two ' ascertained points is the correct line, if there is not sufficient reason for preferring another. Sufficient reason could hardly be found for following the Southern line to its intersection with the Eastern line, run due South from the point on the river, in any respect which should be given to the course of the Eastern *155 line, as represented by á plat, -which, in almost every other particular, would have been found inaccurate, and would have been departed from.
Minor’s plat is laid down as if the running of the land by him was done with the land on his left, as it should' have been : so that, following his delineation, we' should begin from the Black Jack (the only really well established point of the whole tract), run the Southern line, then to Johnson’s land, Shaw’s creek, and so on : but running in the contrary direction, which seems to be preferred by the plaintiff, would make no difference in the principles or rules which should govern the construction of Minor’s plat.
The'motion is dismissed.
Withers and Whitner, JJ., concurred.